# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2017 NOV 21  A 11: 41

US DISTRICT COURT
BRIDGEPORT CT

United States, U.S. Department of the
Treasury and Florence R. Parker Chailla,
Relator, et al.

Vs.

U.S. Department of Education, et al.
Defendants.

Docket No. 3-16-cv-001199

**Rule 50 - Motion to Preserve
Facts & Law for Appeal Of
Orders Entered October 20, 2017**

Federal Rule of Civil Procedure 50 **_provides_** Judgment as a Matter of Law in a Jury Trial;

Related Motion for a New Trial; Conditional Ruling

(a) **JUDGMENT AS A MATTER OF LAW.**

(1) *In General.* If a party has been fully heard on an issue during a jury trial and the

court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for

the party on that issue, the court may:

(A) resolve the issue against the party; and

(B) grant a motion for judgment as a matter of law against the party on a claim or
defense that, under the controlling law, can be maintained or defeated only with a
favorable finding on that issue.

(2) *Motion.* A motion for judgment as a matter of law may be made at any time

before the case is submitted to the jury. The motion must specify the judgment sought and the

law and facts that entitle the movant to the judgment[1].

---

[1](b) RENEWING THE MOTION AFTER TRIAL; ALTERNATIVE MOTION FOR A NEW TRIAL. If the court does
not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have
submitted the action to the jury subject to the court's later deciding the legal questions raised by the
motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not
decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed
motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule
59. In ruling on the renewed motion, the court may:

*Ortiz v. Jordan,* 562 U.S. 180 (2011), held that you generally cannot appeal the order denying your summary judgment motion after trial. Rather, those issues must be preserved with Rule 50 motions, based on the full trial record. The Supreme Court has recognized an exception to this general rule when the order denying summary judgment involves "a purely legal issue" capable of resolution "with reference only to undisputed facts."

Recently, in *Frank C. Pollara Group, LLC, et al. v. Ocean View Inv. Holding, LLC, etc., et al.,* 784 F.3d 177 (3d Cir. Apr. 23, 2015), the Third Circuit confronted a situation where the appellants attempted to raise their gist-of-the-action argument on appeal, after their summary judgment motion on that argument was denied and they did not raise the argument in their Rule 50 motions at trial. The appellants contended that the argument was a purely legal issue, such that they did not have to raise it again in their Rule 50 motions. The Third Circuit disagreed.

---

(1) allow judgment on the verdict, if the jury returned a verdict;

(2) order a new trial; or

(3) direct the entry of judgment as a matter of law.

(c) GRANTING THE RENEWED MOTION; CONDITIONAL RULING ON A MOTION FOR A NEW TRIAL.

(1) *In General.* If the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed. The court must state the grounds for conditionally granting or denying the motion for a new trial.

(2) *Effect of a Conditional Ruling.* Conditionally granting the motion for a new trial does not affect the judgment's finality; if the judgment is reversed, the new trial must proceed unless the appellate court orders otherwise. If the motion for a new trial is conditionally denied, the appellee may assert error in that denial; if the judgment is reversed, the case must proceed as the appellate court orders.

(d) TIME FOR A LOSING PARTY'S NEW-TRIAL MOTION. Any motion for a new trial under Rule 59 by a party against whom judgment as a matter of law is rendered must be filed no later than 28 days after the entry of the judgment.

(e) DENYING THE MOTION FOR JUDGMENT AS A MATTER OF LAW; REVERSAL ON APPEAL. If the court denies the motion for judgment as a matter of law, the prevailing party may, as appellee, assert grounds entitling it to a new trial should the appellate court conclude that the trial court erred in denying the motion. If the appellate court reverses the judgment, it may order a new trial, direct the trial court to determine whether a new trial should be granted, or direct the entry of judgment.

That court concluded that, critical to their gist-of-the-action argument, "the existence of contractual privity depends on certain predicate facts which, contrary to the Appellants' contentions, were vigorously disputed" and the appellants "failed to preserve their objections to the District Court's summary judgment ruling with motions for judgment as a matter of law under Rule 50, and they thus have lost their ability to raise them now."

## TABLE OF CONTENTS

Page(s)

Pre-Trial Orders Appealed ......... 5

1.A. Omitted Facts: Document Numbers 35 and 36 are
Premature and Administrative Termination Motion Filed
To Intervene was not decided ......... 5
    i.    Motion Not Decided By this Court,
        Denied Relator's Due Process ......... 6
    ii.   Appoint of Special Counsel is option to address
        *Public interest issues* requested by Relator ......... 8

1.B. Attorney Misrepresentation Misled Relator and Refused to
Retract False Evidence ......... 9
    i. DOJ Counsel of record Research was for an Improper Purpose ......... 11

1.C. Judicial Due Process Violations Warrant Recusal ......... 16

1.D. Judicial Bias and Attorney Deception and Misconduct
Warrant Vacation of Orders ......... 22

    i.    Due Process Deprivation Cannot fair when bias is afoot ......... 24
    ii.   Fraud on the Court Requires Setting Aside Judgments ......... 28
    iii.  Lack of Candor by DOJ's Counsel of Record Requires
         Rescission ......... 33
    vi.   Standing Protective Order not Enforces, Defendants
         Retaliated Against Relator ......... 33

II. Relator's Claims are not Moot ......... 37

III. Federal Tort Claims Is The Exclusive Jurisdiction of the U.S.
Federal Court of Claims ......... 38

IV. Damages ......... 40

### Exhibits Attached

1. Emailed Administrative Termination Motion filed by United States Department of Justice
2. ..
3. Collier Emails of Oct 12 and 25, 2016 regarding Administrative Termination filed
4. DOJ Office of Professional Responsibility correspondence
5. Relation Back Complaint naming U.S. Department of Education as defendant under Federal Tort
Claims Act for failure to enforce Higher Education Act of 1965 as amended
    a. Affidavit A – University of Bridgeport College of Naturopathic Medicine
    b. Affidavit B – Canadian College of Naturopathic Medicine
    c. Affidavit C – New York College of Health Professions
    d. Affidavit D – Pacific College of Oriental Medicine
    e. Affidavit E – Atlantic Institute of Oriental Medicine
6. Relator's Motion requesting *Appoint Special Counsel* to address Public Interest Issues
7. Estimated Mismanagement of title IV Funds by Program Participation Agreement Holders,
Accreditation Institutions, Servicer and Lender False Certification and Unpaid Refunds in 2003
thru 2017
8. Sum Certain and Relators letter

# PRE-TRIAL ORDERS APPEALED

On October 20, 2017 four separate Orders were entered by Judge Alvin W. Thompson (1)

5:26 p.m., 5:29 p.m., 5:33 p.m. and 5:39 for a False Claims Act suit began with a filed Original,

Amended and Supplement Complaints and Exhibits; and on June 20, 2017 with a Relation Back

Complaint for Federal Tort Claims Act that named the U.S. Department of Education as a

defendant filed under Docket No. 3-16-cv-001199 originally filed July 26, 2016. The four

Orders entered are as follows:

1. The court ordered this case stayed and sealed until such time as the United States of America, the State of California and the State of Connecticut decided whether they would intervene. Each of them has notified the court it has decided not to intervene. Therefore, this case is hereby UNSEALED. It is so ordered. Signed by Judge Alvin W. Thompson on 10/20/2017. (Ly. T.) 5:26 p.m. Document Number 35.

2. The plaintiff's Motion to Seal the Complaint and Exhibits (Doc. No. [3]) is hereby DENIED. See Order Unsealing the Case (Doc. No. [35]). It is so ordered. Signed by Judge Alvin W. Thompson on 1-/20/2017. (Ly. T.) 5:29 p.m. Document Number 36.

3. ORDER: As set forth in the court's Order to Pro Se Relator (Doc. No. [26]), the plaintiff had until June 5, 2017 to obtain legal representation, and the court advised her that if she failed to so, this case would be dismissed. The plaintiff filed a Motion for Extension of time (Doc. No. [28]) is hereby DENIED as moot, and this case is hereby DISMISSED. The Clerk shall close this case. It is so ordered. Signed by Judge Alvin W. Thompson on 10/20/2017. (Ly. T.) 5:33 p.m. Document Number 37.

4. The plaintiff's Motion for Relief from Court Requested (Doc. No. 15), Motion for Reconsideration (Doc. No. [16]), Ex Parte Motion (Doc. No. [18]), Motion for Contempt (Doc. No. [30]), and Motion for Change of Venue (Doc. No. [31]) are all hereby DENIED as moot. See Doc [37]. Signed by Judge Alvin W. Thompson on 10-20-2017. Document Number 38.

## 1. A.  Omitted Facts: Document Numbers 35 and 36 are Premature and filed Administrative Termination Motion to Intervene Was Not Decided

This court's entered Order Document Number 34 has disregarded the other jurisdictions

named in the False Claims Act suit have not yet decided whether it would or would not

intervene, such as New York and Florida. Its decision to UNSEAL is premature. In the

alternative, the Judge's finding that the United States decided not to intervene is not correct. United States filed an *Administrative Termination motion* on September 9, 2016, that Motion is still outstanding. Judge Thompson to date did not decide that motion. The fact that he did not decide the filed Administrative Termination was omitted.

Document Numbers 35 and 36 are linked as both discuss *unsealing*, as provided in 36:

The plaintiff's Motion to Seal the Complaint and Exhibits (Doc. No. [3]) is hereby denied. See Order Unsealing the Case (Doc. No. [35]). It is so ordered. Signed by Judge Alvin W. Thompson on 10/20/2017. (Ly. T.) Document Number 36.

For the same reason both Orders 35 and 36 are premature to unseal and dismissal of this False Claims Act and the Federal Tort Claims Act suits because there are two outstanding United States jurisdictions, an international location that have not made a decision one way or the other regarding intervention. More contentiously, the United States' Administrative Termination motion supported by Collier's intention, it was to intervene. [See Exhibits 1 thru 3 attached]. Its' motion was not decided by this court which hurt Relator's due process rights.

This Court's precedents set forth an objective standard that requires recusal when the likelihood of bias on the part of the judge "'is too high to be constitutionally tolerable.'" Caperton v. A. T. Massey Coal Co., 556 U. S. 868, 872 (2009) (quoting Withrow v. Larkin, 421 U. S. 35, 47 (1975)). Applying this standard, the Court concludes that due process compelled the justice's recusal.

### i. Motion Not Decided by this Court, Denied Relator's Due Process

September 9, 2016, Administrative Termination Motion filed by United States Department of Justice counsel William J. Collier (Collier) and Relator both believed it would be decided. [See Exhibits 1 thru 3 attached]. Collier called Relator. He discussed the reasons for the Administrative Termination in detail with her. He requested her permission. Relator

consented. See Exhibit – 1. Administrative Termination motion attached.  His excepted

September 9, 2016, email below; he stated, 'The attached documents ***were filed*** under seal with

the court earlier today.'

> **Collier, William (USACT)** <William.Collier@usdoj.gov>
> To Florence Parker
> 09/09/16 at 1:29 PM
> Atty. Parker Chailla—
>
> The attached documents were filed under seal with the court earlier today. The documents are
> related to the "administrative termination" issue that you had consented to. Copies of the filings
> have also been sent to you via U.S. mail. Please feel free to follow up with any questions.

On September 9, 2016 until March 1, 2017 or thereabout, Relator was led to believe the

United States via its Administrative Termination motion had intervened.

In Christiansen[2]  that Court definitively rejects the notion that the Government must

intervene before settling (or dismissing) a case over relator objection in the Eleventh Circuit, the

Government's role in non-intervened cases for purposes beyond settlement and dismissal

continues to raise questions, highlighting the often complicated relationship that can exist

between the Government-as-assignor and relator-as-assignee in qui tam cases.  One week prior to

the Christiansen opinion, a district court in the Eleventh Circuit criticized the Justice Department

for attempting to influence the outcome of an FCA suit without actually intervening. [as in this

case].  And, in a thinly-veiled swipe at the Government's contention that it is in a better position

than relators to advance the "correct" interpretation of the FCA, the district court pointed to some

adverse evidence on that front:

> [T]he United States asserts a "keen interest" in the "correct" application of the False Claims
> Act. But … the United States' involvement in [Universal Health Servs. v. United States ex
> rel. Escobar, 136 S.Ct. 1989 (2016)] suggests, and the United States identifies, *no unique
> insight into the correct interpretation and application of the False Claims Act*. In Escobar,
> the United States urged affirming the lower court's decision; Escobar unanimously vacates
> the lower court's decision.

---

[2] United States ex rel. Christiansen v. Everglades College, Nos. 16-10849 & 16-11839, 2017 WL 1658478 (11th Cir.
May 3, 2017).

Relator was led to believe the United States via its filed Administrative Termination Motion had in fact intervened. The failure of this Court to decide that Motion is a direct impediment to Relator's Due Process who had detrimentally relied upon the United States' intervention to amicably and spearhead a settlement in this matter.

**IN CONCLUSION**

The United States had intervened.

**ii.**     <u>**Appoint Special Counsel to litigate FCA student loan Massive Frauds and Defaults**</u>

§ 600.1 Grounds for appointing a Special Counsel provides:

The Attorney General, or in cases in which the Attorney General is recused, the Acting Attorney General, will appoint a Special Counsel when he or she determines that criminal investigation of a person or matter is warranted and— (a) That investigation or prosecution of that person or matter by a United States Attorney's Office or litigating Division of the Department of Justice would present a conflict of interest for the Department or other extraordinary circumstances; and (b) That under the circumstances, it would be in the public interest to appoint an outside Special Counsel to assume responsibility for the matter.

§ 600.2 Alternatives available to the Attorney General provides:

When matters are brought to the attention of the Attorney General that might warrant consideration of appointment of a Special Counsel, the Attorney General may: (a) Appoint a Special Counsel; (b) Direct that an initial investigation, consisting of such factual inquiry or legal research as the Attorney General deems appropriate, be conducted in order to better inform the decision; or (c) Conclude that under the circumstances of the matter, the public interest would not be served by removing the investigation from the normal processes of the Department, and that the appropriate component of the Department should handle the matter. If the Attorney General reaches this conclusion, he or she may direct that appropriate steps be taken to mitigate any conflicts of interest, such as recusal of particular officials.

Relator has shown that she is but one of 44,000,000 student loan borrowers under the federally insured student loan program that is subjected to fraudulent debts due to false student loan certifications, unpaid refunds retained by schools and identity thefts by academic institutions who submitted and were paid over $145,000.00 in debts she did not authorize.

Her June 20, 2017 motion provided reasonably probabilities that others were similarly subjected to false debts by academic institutions, lenders and servicer PPA holders. Exhibit 6-Excerpt of Relator's motion requesting appointment of special counsel.

**IN CONCLUSION**

For the foregoing reasons, Relator requests that this court consider appointment of special counsel to investigate and litigate this matter for the benefit of the public interests raised.

### 1.B   Attorney Misrepresentation Misled the Court, Relator suffered from use of false evidence introduced for an improper purpose DOJ counsel of record Refused to Correct False Evidence

An attorney is an officer of the court and owes the court fiduciary duties and loyalty. Trehan v. Von Tarkanyi, 63 B.R. 1001, 1007 (Bankr. S.D.N.Y. 1986). Accordingly, "[w]hen an attorney misrepresents or omits *material facts to the court*, or acts on a client's perjury or *distortion* of evidence, his conduct may constitute a fraud on the court. Id.

Furthermore, when an *officer of the court fails to correct* a misrepresentation or retract false evidence submitted to the court, it may also constitute fraud on the court. In re McCarthy, 623 N.E. 2d 473, 477 (Mass. 1993). Notwithstanding, examination of the officer and his or her duty is not limited solely to an attorney's duty of candor toward the tribunal. See e.g., Nev. Rules of Prof'l Conduct 3.3 (stating that lawyers shall not make false statements of fact or law to the court or fail to correct false statements of material fact to the court). Rather, the analysis requires courts to examine certain duties that arise well before the offender involves the court.

Factual allegations that Relator is a layperson is material to her False Claims Act suit, its going forward and to present claims into this court not tainted with misrepresentations. Relator is not a layperson unlike that fact alleged in DOJ Counsel of record's March 2017 filed Motion.

Rule 4-3.3 Candor Toward The Tribunal provides: (a) False Evidence; Duty to Disclose. A lawyer shall not knowingly:

(1)     make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

(2)     fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

(3)     fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(4)     offer evidence that the lawyer knows to be false. A lawyer may not offer testimony that the lawyer knows to be false in the form of a narrative unless so ordered by the tribunal. If a lawyer, the lawyer's client, or a witness called by the lawyer has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.

DOJ counsel of record knew she made a false statement on June 20, 2017 or thereabout in the Rebuttal of Relator. DOJ counsel of record did not disclose the false statement she made to the court in her Certified March 2017 motion filed. DOJ counsel of record knew facts were false on or by June 20, 2017. DOJ counsel of record did not take reasonable remedial measures including disclosure to the tribunal to the best of Relator's knowledge.

An attorney is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party.[3]

DOJ counsel or record deceived Relator by delaying her March 2017 motion that asserted material false facts about Relator's academic status and attainment.

Conducting research at the U.S. Department of Education to determine whether Relator had earned a Jurist Doctorate is not believable because it is not a repository of academic attainment information. Yielding the information allegedly sought would not prove wise or

_____

[3] McKinney's Judiciary Law § 487. Chapter 30. Of the Consolidated Laws Article 15. Attorneys and Counsellors.

beneficial in that regard to learn the academic attainment of anyone. While it is not a repository of academic information, the U.S. Department of Education is known to collect and is a repository for ethnicity, race and sex information of persons who borrow via the federally insured student loan funded program.

### i.     DOJ Counsel of record Research Was for an Improper Purpose

The signature of an attorney or party constitutes a certificate by him that:

(i)      he has read the pleading, motion, or other paper,

(ii)     to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and

(iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

DOJ counsel or record between March 2017 till October 20, 2017 had seven months to correct the factual misstatement filed in her motion. Earlier of June 20, 2017 she was fully aware as was this court that Relator was not a layperson [not defined by Mergent] given she disclosed that she did earn a Jurist Doctorate degree and from where. Within that seven month period DOJ counsel of record had ample opportunity to investigate, inquire or confirm the facts that Relator disclosed. Without a correction no good faith is apparent since there was no extension, modification or reversal of existing law.

What appears is DOJ counsel of record filed her March 2017 motion for an improper purpose.

Surely, a reasonable inquiry into the files records left by Collier should have disclosed the existence of the Administrative Termination filed on September 9, 2016. Coupled with

discoveries of Relator' race and other attributes learned by her U.S. Department of Education research, aware that counsel made factual and legal error certified by her signature; that were highlighted in Relator's Rebuttal. By now, DOJ counsel of record has logically discovered that Relator's law school education did not require her use of student loans to cover the cost for her to graduate from law school. At this point, DOJ counsel or record, her conduct may point to a developed malice towards Relator thereafter she may have deemed Relator to be not only a layperson but also novice as well. Further, DOJ counsel of record aware of the Relief from the Court motion filed that Relator survives on a Social Security Retirement limited income. Just as law firms shy away from False Claims Act suits due to expenses associated with this type of litigation; for Relator the costs are crippling. The false debts are not easily walked away from and be whole. Similarly, suffering under the years of non-compliance with the HEA of 1965 by the named defendants, massive non-compliance resulted into a 47-pages credit report of derogatory information; a National Student Loan Data System report that is wholly incorrect and the academic institutions, servicer, lender and the U.S. Department of Education personnel itself ignored their duties and are all named in the *Federal Tort Claims Act relation back complaint* attached below; each have after this filing they have continued to default loans without determining the validity of the debt. Demands for repayment for over $145,000.00 of student loan debts from Relator whom did not authorize the ballooned debt increased unlawfully by fraud and non-compliance with the HEA of 1965 must be dealt with fairly.

DOJ counsel of record's misconduct has enlarged cost to litigation of this matter by ignoring the administrative termination, causing an appeal due to misrepresented facts and legal claims are too raised for an alleged improper purpose she has orchestrated.

Attorney misconduct statute, provides for both criminal and civil redress against an attorney who engages in deceit or collusion with intent to deceive the court or any party, was not limited in its application only to attorney's conduct in connection with proceedings pending in [New York] courts; statute contained no such express limitation, and state courts had sufficient interest in supervising conduct of attorneys admitted before its bar and in protecting resident clients who had been harmed by deceit of admitted attorney. Cinao v. Reers, 2010, 27 Misc.3d 195, 893 N.Y.S.2d 851. Attorney and Client 26; Attorney and Client 33; Attorney and Client 114.

DOJ counsel of record misconduct was deceitful. She knew or should have known of the September 9, 2016 Administrative Termination. Disregarding the rights of Relator she filed her March 2017 motion to deceive Relator and in the process deny her due process rights.

Allegations establishing a chronic and extreme pattern of legal delinquency or that the actions of the attorneys caused plaintiff damages were required to state claim under Judiciary Law provision permitting recovery of treble damages for attorney misconduct. Havell v. Islam (1 Dept. 2002) 292 A.D.2d 210, 739 N.Y.S.2d 371. Attorney And Client 129(4) Allegation of pattern of wrongdoing or deceit was necessary to sustain client's claim against attorney under Judiciary Law's attorney misconduct provision. Pellegrino v. File (1 Dept. 2002) 291 A.D.2d 60, 738 N.Y.S.2d 320, leave to appeal denied 98 N.Y.2d 606, 746 N.Y.S.2d 456, 774 N.E.2d 221. Attorney and Client 129(2).

Too late, DOJ counsel of record filed her March 2017 motion some seven months after the Administrative Termination. Knowingly and intentionally she made the following *incorrect statements of fact and of law*:

(1)     In ***Footnote 1*** of her March 2017 Motion, Counsel alleged Relator did not have a ***Jurist Doctorate*** based upon her U.S. Department of Education research conducted.

(2)     The body of her Motion continued with allegations that laypersons cannot litigate False Claims Act suits in reliance upon case law in **U.S. ex rel. Mergent Services v. Flaherty** that she applied to Relator.

As the Court of Appeals for the Second Circuit has explained, there are practical and policy reasons for limiting the appearance of laypersons in the federal courts:

> "the conduct of litigation by a nonlawyer creates unusual burdens not only for the party he represents but as well for his adversaries and the court. The lay litigant frequently brings pleadings that are awkwardly drafted, motions that are inarticulately presented, proceedings that are needlessly multiplicative. In addition to lacking the professional skills of a lawyer, the lay litigant lacks many of the attorney's ethical responsibilities, e.g., to avoid litigating unfounded or vexatious claims." Jones v. Niagara Frontier Transp. Authority, 722 F.2d 20 at 22 (2d Cir. 1983).

Sadly, DOJ counsel of record is not a layperson, she works within the 2nd Cir., clearly, burdens are also created for counsels as well. Regarding ethical responsibilities it appears too that counsels cause vexatious claims as well. Lastly, ***U.S. ex rel Mergent Services v. Flaherty*** does not apply to Relator who is not a layperson; she has earned a Jurist Doctorate. Also, *Mergent* does not specifically address whether private parties may bring qui tam actions pro se, see 31 U.S.C. §§3729-33, this jurisdiction has, 'previously ***suggested*** that they cannot, ' prosecute a qui tam action under [the Act] pro se"). For purposes of Mergent's suggested idea, it also does not define layperson within the meaning of what the ***Mergent*** case intended; nor has such been defined to warrant denial of due process rights of a qui tam Relator.

In a summary disposition, the justices gave Paul Bishop and Robert Kraus another chance to argue that their case wouldn't have been dismissed if the top court's ruling in *Universal Health Services Inc. v. U.S. ex rel Escobar* had been on the books. The pair had argued that the Second Circuit's view of what counts as lying to the government was voided by

the *Escobar* decision just a month after the appeals court affirmed the dismissal of their case against Wells Fargo.

An action brought by a private person under the False Claims Act (FCA) is termed a "qui tam" suit, and the person who brings such an action is referred to as a "relator," " "informer," "private prosecutor," or "private attorney general." 31 U.S.C.A. § 3730(b). Bagley v. U.S., 963 F.Supp.2d 982 (2013), 112 A.F.T.R.2d 2013-5602, 2013-2 USTC P 50,462.

To warrant dismissal for not being represented by a licensed counsel is contrary to Due Process and have a chilling effect upon Relators which is contrary to the desires of The Court also waned in dicta about the purposes of the FCA. The aim of FCA litigation was reinforced by the Court as among other things "'encourag[ing] more private enforcement suits' to 'strengthen the Government's hand in fighting false claims.'" *Id*. at 438. The Court sung the praises of the FCA as a structural policing agent against fraudulent business practices. *State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*, Docket No. 15-513, slip op. (S.Ct. December 6, 2016)

Under a duty to correct as an Officer of the Court, DOJ counsel did not correct her motion. September 9, 2016, Counsel's motion to intervene materially injured Relator's claim. The same misrepresentations were repeated in this Court's Orders as its basis to dismiss Relator's False Claims Act suit. See Document Numbers 37 and 39.

Surprise by the March 2017, turnabout of newly assigned DOJ counsel of record, Relator had reasonably relied upon Collier's earlier September 9, 2016 filed motion to carry out the stated and described procedure discussed regarding Administrative Terminations. Without deciding the Administrative Termination Motion of the United States, this court entered an Order on October 20, 2017 in Document Number 35 that Order commanded:

> The court Ordered this case stayed and sealed until such time as the United States of America, the State of California and the State of Connecticut decided whether they would

intervene. Each of them has notified the court it has decided not to intervene. Therefore, this case is hereby UNSEALED. It is so ordered signed by Judge Alvin W. Thompson on 10/20/2017 at 5:26 p.m.

Document number 35 problems are multiplied:

(1) assuming the United States filed the Administrative Termination motion, it should have been decided.

(2) Did Judge Alvin W. Thompson's bias cause him to fail to decide this critical Motion; such it speaks to due process violations.

Taken as truthful that the United States counsel Collier did file the Administrative Termination motion as he stated; then Relator was harmed by this court's biased abuse of discretion directed at denying her Due Process and Equal Protection Constitutional rights.

## IN CONCLUSION

Factual and legal misrepresentations used to influence the court, is fraud on the court. Uncorrected facts and law made by counsel are ethical 3.3 lack of candor towards the tribunal. Judicial bias that harms litigant's due process rights when factual errors are knowingly used in Orders that are influenced by false counsel misrepresentations are harmful to the rights of litigant's Constitutional rights.

Such Orders by law should be vacated.

## 1.C  <u>Judicial Due Process Violations Warrant Recusal</u>

A fair trial in a fair tribunal is a basic requirement of due process."[4] The judge's impartiality is essential for implementing a fair trial. In re Murchison, 349 U.S. 133, 136 (1955). Impartiality implicates freedom from bias,[5] prejudice,[6] and interest.[7] Accordingly, the Supreme

---

[4] In re Murchison, 349 U.S. 133, 136 (1955).
[5] "Bias implies a mental leaning in favor of or against someone or something." Donald C. Nugent, Judicial Bias, 42 CLEV. ST. L. REV. 1, 2 n.5 (1994).
[6] "Prejudice implies a preconceived and unreasonable judgment or opinion . . . marked by suspicion, fear, intolerance, or hatred." Id.

Court has recognized situations where due process requires a judge's recusal[8] from a case because of the judge's interest in the outcome. The Supreme Recusal statutes and codes seek not only to implement due process of law, but also to foster a public perception of judicial impartiality.[9] The Supreme Court has considered few cases in which a litigant challenged a judge's failure to recuse on constitutional grounds.

The terms "recusal" and "disqualification" are often used interchangeably. RICHARD E. FLAMM, JUDICIAL DISQUALIFICATION § 1.1 (2d ed. 2007). The Supreme Court generally uses "recuse" to refer to a judge's removal of himself or herself from a case and "disqualify" to refer to involuntary removal of a judge from a case, as by a litigant's motion pursuant to a statute or the Due Process Clause. See, e.g., Caperton v. A. T. Massey Coal Co., 129 S. Ct. 2252, 2258 (2009) ("Justice Starcher urged Justice Benjamin to recuse himself . . . . Caperton moved a third time for disqualification [of Justice Benjamin] . . . ."). The federal recusal statute, on the other hand, sets forth circumstances in which a "justice, judge, or magistrate judge of the United States shall disqualify himself." 28 U.S.C. § 455 (2006).

28 U.S.C. § 455 governs recusal of federal judges and substantially incorporates the Model Code, providing a general command that a federal judge "shall disqualify himself in any

---

[7] See, e.g., Tumey v. Ohio, 273 U.S. 510, 523 (1927) (finding that judge's pecuniary interest in outcome of case violated due process). The common law required recusal only when the judge had an interest in the case; bias or prejudice were not grounds for recusal. Deborah Goldberg et al., The Best Defense: Why Elected Courts Should Lead Recusal Reform, 46 WASHBURN L.J. 503, 512 (2007).

[8] The terms "recusal" and "disqualification" are often used interchangeably. RICHARD E. FLAMM, JUDICIAL DISQUALIFICATION § 1.1 (2d ed. 2007). The Supreme Court generally uses "recuse" to refer to a judge's removal of himself or herself from a case and "disqualify" to refer to involuntary removal of a judge from a case, as by a litigant's motion pursuant to a statute or the Due Process Clause. See, e.g., Caperton v. A. T. Massey Coal Co., 129 S. Ct. 2252, 2258 (2009) ("Justice Starcher urged Justice Benjamin to recuse himself . . . . Caperton moved a third time for disqualification [of Justice Benjamin] . . . ."). The federal recusal statute, on the other hand, sets forth circumstances in which a "justice, judge, or magistrate judge of the United States shall disqualify himself." 28 U.S.C. § 455 (2006).

[9] See, e.g., Amanda Frost, Keeping Up Appearances: A Process-Oriented Approach to Judicial Recusal, 53 U. KAN. L. REV. 531, 532 (2005) (observing that judiciary derives its legitimacy from its appearance of impartiality).

proceeding in which his impartiality might reasonably be questioned."[10] A mere "appearance of impropriety" to an objective observer is enough to trigger disqualification under § 455(a); the judge need not even be aware of the disqualifying circumstances.[11]

Liljeberg v. Health Services Acquisition Corp.[12] exemplified the sort of "appearance of impropriety" that—even without the judge's awareness of it— gives rise to disqualification. In Liljeberg, Judge Collins, a district judge, had served on the board of trustees of a university that had sold a parcel of land to the petitioner with the understanding that the petitioner would build a hospital on the land.[13] The dispute centered on the respondent's challenge to the petitioner's ownership of a corporation that was going to construct the hospital.[14] The value of the negotiations to the university therefore hinged on the petitioner's success before Judge Collins.[15] The Supreme Court held that even though Judge Collins had forgotten about the university's interest in the outcome, his participation in the case violated § 455(a).[16] A confluence of facts— Judge Collins' regular attendance at university board of trustees meetings, the other trustees' awareness of Judge Collins' conflict of interest, and Judge Collins' failure to recuse himself when he finally did discover the university's interest in the case—might "reasonably cause an objective observer to question Judge Collins' impartiality" and therefore required recusal.[17]

---

[10] 28 U.S.C. § 455(a) (2006).
[11] Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 859–60 (1988). The Liljeberg Court concluded that section 455(a) could not require the judge's actual knowledge because such an interpretation would render extraneous section 455(b)(4)'s explicit requirement of knowledge. Id. at 859.
[12] 486 U.S. 847 (1988).
[13] Liljeberg, 486 U.S. at 850.
[14] Id.
[15] Id.
[16] Id. at 861.
[17] Id. at 865–67.

Since 1927, the Supreme Court has identified additional instances in which the Due Process Clause requires recusal.[18]

Judicial impartiality protects the rights of individual litigants and guards the integrity of the justice system as a whole. Accordingly, this Court has declined to rely on inherently imprecise and unreliable subjective evaluations of a judge's own personal bias. Instead, under both the ABA Model Code of Judicial Conduct (Code) and the Due Process Clause, this Court's judicial recusal standard is necessarily objective, focusing not on whether a judge is actually biased, but on whether a judge's impartiality might reasonably be questioned. Recusal is required when "the probability of actual bias on the part of the judge . . . is too high to be constitutionally tolerable." Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 872 (2009) (quoting Withrow v. Larkin, 421 U.S. 35, 47 (1975)). Furthermore, judges have a responsibility to avoid impropriety and the appearance of impropriety. See Model Code of Judicial Conduct Canon 2. In this case, the risk that Judge Marullo would actually be biased far surpassed the level that the Constitution tolerates.

This Court has explained that "[t]he difficulties of inquiring into actual bias, and the fact that the inquiry is often a private one, simply underscore the need for objective rules." Caperton, 556 U.S. at 883; see also Williams, 136 S. Ct. at 1905 ("Bias is easy to attribute to others and difficult to discern in oneself. To establish an enforceable and workable framework, this Court's

[18] . See Caperton v. A. T. Massey Coal Co., 129 S. Ct. 2252, 2263–64 (2009) (holding that due process required judge to recuse when one litigant had contributed large amounts to political action committee that had campaigned on judge's behalf); Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 823–24 (1986) (holding that state supreme court judge's interest in affirming large jury verdict, which would increase judge's chances of prevailing in pending personal lawsuit, was violation of due process and judge therefore should have recused); Ward v. Vill. of Monroeville, 409 U.S. 57, 60 (1972) (holding that mayor's interest in enriching town coffers violated due process when mayor sat as judge who collected fines only upon conviction); Mayberry v. Pennsylvania, 400 U.S. 455, 463–64 (1971) (holding that defendant's vicious personal attacks on judge's integrity required judge's recusal from contempt proceeding); In re Murchison, 349 U.S. 133, 138–39 (1955) (holding that judge's role as both judge and grand jury in earlier proceeding from which contempt charges arose required his recusal from contempt trial); Tumey v. Ohio, 273 U.S. 510, 523 (1927) (holding that judge's receipt of costs only upon conviction of defendant was violation of due process requiring recusal).

precedents apply an objective standard that, in the usual case, avoids having to determine whether actual bias is present."). Thus, an objective recusal standard is designed to protect "against a judge who simply misreads or misapprehends the real motives at work in deciding the case." Caperton, 556 U.S. at 883. For, as this Court understands, a "judge's own inquiry into actual bias . . . is not one that the law can easily superintend or review." Id.

Under the Code, the recusal test for appearance of impropriety is whether "reasonable minds" would perceive that the judge engaged in conduct that "reflects adversely on the judge's honesty, impartiality, temperament, or fitness to serve as a judge." Model Code of Judicial Conduct R. 1.2 cmt. 5. A judge is required to disqualify herself "in any proceeding in which the judge's impartiality might reasonably be questioned." Model Code of Judicial Conduct R. 2.11(A). Thus, under both the Code and the Due Process Clause, the standard for determining whether a judge is required to recuse herself is objective, focusing not on whether the judge is actually biased, but on whether the judge's impartiality might reasonably be questioned. Due process, one of the most hallowed and ancient of rights, apparently has no place in the law when a citizen attempts to seek recompense from a judge who has wrongfully caused an injury.

This Court's bias and impartiality speaks to Judge Alvin W. Thompson actions that were contrary to Relator's Due Process rights. Specifically,

(1) he did not decide the Administrative Termination filed by the United States,

(2) he entered an Order May 1, 2017.

(3) It contained the incorrect facts that were provided by DOJ counsel of record,

(4) June 20, 2017, Relator rebutted the incorrect information.

(5) Relator provided the correct statement of facts,

(6) October 20, 2017, Judge Thompson entered four Orders.

(7) The four Orders included the incorrect facts stated in both DOJ counsel or record's Motion and the Court's May 1, 2017 Order,

(8) In oral and written statements of Collier that he filed the agreed upon Administrative Termination motion; see Exhibits 1 thru 3.

(9) The Administrative Termination was a critical and heavily relied upon motion by Relator who sought to resolve this False Claims Act matter amicably,

(10) Collier's September 2016 Administrative Termination motion to the best of Relator's knowledge was not withdrawn.

(11) It was not retracted or otherwise made invalid

(12) If it were withdrawn, no Notice was provided to Relator of such an instance and

(13) DOJ counsel of record did not discuss or provide any other intent to withdraw the earlier filed motion to intervene which would lead any reasonably prudent person to believe the motion was viable and awaiting decision.

Protracted delays in this Court caused Relator's reliance to her detrimental harm. It allowed Relator to be misled for six consecutive months. Relator believed the September 9, 2016, Motion was outstanding awaiting decision by this Court as filed by Collier. Collier questioned about the delay was also not Notified of any intent to withdraw that Motion. Questioned by Relator for the delay, Collier stated Judge Thompson gets 'behind.' Exhibit 2 – Email from Collier to Relator.

Collier's belief that '*Judge Thompson does not as a routine deny Administrative Terminations in the past;*' his comment also lead Relator to rely upon the tenants of that Motion to resolve this matter. Exhibit – 3 – Collier's email

Patterns of delay caused Relator's economic harm, [See Exhibit 8 – Sum Certain]' retaliation from defendants, [See Motions for Relief and Contempt Relator filed] and Ordered to scramble to find licensed counsel within one of the five jurisdictions subject to dismissal absent licensed counsel, is not fair.

U.S. Supreme Court, in *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, held that the

Federal Circuit must review factual findings underlying claim construction for ***clear error***,

pursuant to Federal Rule of Civil Procedure 52(a)(6). In so ruling, the Supreme Court rejected

the Federal Circuit's *en banc* holdings in *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448 (Fed.

Cir. 1998), and *Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 744 F.3d 1272

(Fed. Cir. 2014), which had required *de novo* appellate review for all aspects of the

*Markman* process. The Court's decision to provide deference to the "evidentiary underpinnings"

of district courts' claim construction rulings makes clear that factual determinations in patent

cases should not be treated differently than those in other areas of the law.

1.D  **Judicial Bias, Attorney Deception and Misconduct
Warrant Vacation of Orders**

Linked to the above Order is the second Order entered on October 20, 2017 at 5:33 p.m.,

which **Ordered**:

> 'As set forth in the court's Order to Pro se Relator (Doc. No. [26]), the plaintiff had until
> June 5, 2017 to obtain legal representation, and the court advised her that if she failed to do
> so this case would be dismissed. The plaintiff filed a Motion for Extension of Time (Doc.
> No. [28]) seeking to extend the deadline for obtaining counsel to July 30, 2017. More than
> 80-days have passed since July 30, 2017, and no counsel has appeared on behalf of plaintiff.
> Therefore the plaintiff's Motion for Extension of Time (Doc. No. [28]) is hereby DENIED as
> moot, and this case is hereby DISMISSED. The Clerk shall close this case. It is so ordered.
> Signed by Judge Alvin W. Thompson on 10/20/2017 Ly,T.)'Document Number 37.

Similarly, DOJ counsel of record's March 2017 motion alluded to the requirement of

Relator to obtain counsel because she was a layperson litigating Pro Se; just as the above Order

repeats in its command. Relator is not a layperson, the Motion filed by an Officer of the Court

was incorrect just as this court's Order, it too is incorrect.

This court does not state a legal basis its Order in Document Number 37; although, DOJ

counsel of record did rely upon a misstatement of law found in *U.S. ex rel. Mergent Services v.*

*Flaherty*. Counsel incorrectly applied layperson case to a non-layperson who has earned a Jurist Doctorate degree.

Appellate review of a District Court's denial of a Rule 59(e) motion for relief from judgment for abuse of discretion (except for questions of law, which are subject to plenary review). Cureton v. Nat'l Collegiate Ath. Ass'n, 252 F.3d 267, 272 (3d Cir. 2001). Similarly, appellate review a Rule 15 motion for leave to amend a complaint for abuse of discretion, and if "a timely motion to amend judgment is filed under Rule 59(e), the Rule 15 and 59 inquiries turn on the same factors." Id. Under such a review, we are cognizant of Rule 15's admonition that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2).

In reliance upon the United States' filed September 9, 2016 Administrative Termination motion; Relator has been injured by the deception of DOJ counsel of record, failure of this court to decide motions and multiple false facts and law the DOJ counsel of record introduced into this court proceeding in her filed March 2017 Motion.

Judge Alvin W. Thompson, aware the Administrative Termination was not retract or rescind, neither was his incorrect May 1, 2017 Order albeit was requested by Relator. June 20, 2017, rebuttal to correct the incorrect facts, Relator informed Judge Thompson of the corrections. Further, he had the wherewithal to investigate the facts to learn the truth on his own. Judge Thompson ignored the corrections. His bias is complete and illustrated in his October 20, 2017 Orders that relied upon and used the same false facts, law or case law alleged by DOJ counsel of record which was equally misstatement of law. Further, the Judges' biased conduct is illustrated by the failure to demand counsel to:

(1) Withdraw, retract or

(2) otherwise correct her factually incorrect Motion that was false as to Relator's

academic attainment or

(3) demand she rescind her Motion.

Judge Thompson did not request any correction be made on the part of DOJ counsel of record. Orders he subsequently entered on October 20, 2017 were directly influenced by DOJ counsel of records false statement and legal misapplication. Judge Thompson has also repeated the same language in the two Orders referenced above that was used by DOJ counsel of record and as further explained below.

Aware of ethical misconduct of counsels, Relator reported DOJ Counsel of Record to her employers' Office of Professional Responsibility for her actions discussed above. Unlike this Court's options, it has chosen to wait till the conclusion of this matter before a decision regarding DOJ counsel of record's fate. Exhibit – 4 DOJ Office of Professional Responsibility.

### i.     <u>Due Process Deprivation cannot be fair when Bias is afoot</u>

Due process guarantees "an absence of actual bias" on the part of a judge. In re Murchison, 349 U. S. 133, 136 (1955).

Bias is easy to attribute to others and difficult to discern in oneself. To establish an enforceable and workable framework, the Court's precedents apply an objective standard that, in the usual case, avoids having to determine whether actual bias is present. The Court asks not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, "the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" Caperton, 556 U. S., at 881.

The False Claims Act penalizes the knowing submission of a false or fraudulent claim for payment to the federal government. 31 U.S.C. § 3729(a)(1). Rather than rely solely on federal

agencies to police fraudulent claims, Congress authorized private persons to bring what are known as qui tam actions. In a qui tam suit, a private party, called the relator, challenges fraudulent claims against the government on the government's behalf, ultimately sharing in any recovery.

When bringing a qui tam action under the False Claims Act, a relator need not allege a personal injury. See Vt. Agency of Nat. Res. v. United States ex rel. Stevens, 529 U.S. 765, 772-73 (2000). Instead, she can bring suit "to remedy an injury in fact suffered by the United States." Id. at 771, 774. To encourage relators to bring suits on the government's behalf, Congress gave them a stake in the controversy: they can share up to 30 percent of any proceeds ultimately recovered. 31 U.S.C. § 3730(d). The government also can elect to intervene in, and assume control of, any qui tam action, in which event the relator's share of the recovery becomes capped at 25 percent. Id. § 3730(b)(2), (d)(1). Over time, Congress learned that the bounty available to qui tam relators created "the danger of parasitic exploitation of the public coffers." United States ex rel. Springfield Terminal Ry. v. Quinn, 14 F.3d 645, 649 (D.C. Cir. 1994). To curtail abusive suits, Congress established "a number of restrictions" on qui tam actions. State Farm Fire and Cas. Co. v. United States ex rel. Rigsby, 137 S. Ct. 436, 440 (2016); see United States ex rel. Heath v. AT&T, Inc., 791 F.3d 112, 116 (D.C. Cir. 2015).

Due process clause is an entitlement to all citizens, rights of equal protection of the law is also afforded to all citizens. Deprivation of constitutional rights to obtain fair justice from the courts is contrary to the United States of America. To believe that only a licensed attorney can litigate a False Claims Act suit is purely elitist in attitude.

Further contrary to U.S. ex rel; Relator is not a lay person. Claims that unlicensed attorneys are not held to the ethical standard of a licensed counsel incorrect and nonsense. All

persons who sign certifications and file documents into the courts are treated as and held to the standards of counsels for falsehoods, misrepresentations or other deceitful acts.

**IN CONCLUSION**

The district court has the duty and responsibility of supervising the conduct of attorneys and all litigants pro se or otherwise who appear before it. Trust Corp. v. Piper Aircraft Corp., 701 F.2d 85, 87 (9th Cir.1983). Since the district court is vested with the power and responsibility of supervising the professional conduct of attorneys appearing before it, the appropriate standard of review is "abuse of discretion." Erickson v. Newmar Corporation U.S. 9th Cir Court of Appeals No. 94-15726 June 18, 1996. Further, federal courts have inherent powers to manage their own proceedings and to control the conduct of those who appear before them. Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991). By invoking the inherent power to punish bad faith conduct which abuses the judicial process, a court must exercise discretion in fashioning an appropriate sanction. Id. at 44-45, 111 S.Ct. at 2132-33.

Notwithstanding the procedural and ethical components of these rules, there will always be lawyers and parties that simply disregard or sidestep the rules to gain an advantage. And it does not matter whether the rule falls within a "gray area" of law or is replete with obvious warnings and penalties designed to deter the offending party from abusive practice. Consider, for example, Rule 26(g) of the Federal Rules of Civil Procedure.

This rule—"[o]ne of the most important, but apparently least understood or followed, of the discovery rules"[19]—clearly and expressly requires that "every discovery request, response, or

---

[19] *Id.* at 357.

objection be signed by at least one attorney of record, . . . or by the [client], if unrepresented."[20] The signature "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry," the discovery is complete and correct, and that the discovery request, response, or objection is:

> (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
> (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
> (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.71

If a lawyer or party makes the certification required by Rule 26(g) that violates the rule, the court "must" impose an appropriate sanction, which may include an order to pay reasonable expenses and attorney's fees caused by the violation.

Rule 26 is clear on its face and in its purpose: deter abusive discovery and sanction offending parties for misconduct in discovery. One would think that the transparencies of the rule and the obvious consequences for compliance would have a strong deterrent effect, yet that is not always the case. In addition to Rule 26, other remedies exist to prevent abusive discovery, including sanc**tions**,[21] discovery statutes,[22] and misconduct-reporting boards.[23] These rules and

---

[20] FED. R. CIV. P. 26(g).

[21] Id.

[22] *Id.* The Advisory Committee's Notes to Rule 26(g) provide further guidance: Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37. In addition, Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions. The subdivision provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection. . . .

If primary responsibility for conducting discovery is to continue to rest with the litigants, they must be obliged to act responsibly and avoid abuse. With this in mind, Rule 26(g), which parallels the amendments to Rule 11, requires an attorney or unrepresented party to sign each discovery request, response, or objection. . . .

Although the certification duty requires the lawyer to pause and consider the reasonableness of his request, response, or objection, it is not meant to discourage or restrict necessary and legitimate

remedies share a few common shortfalls. First, they are written and used to deter abusive conduct *during* the litigation. However, these rules have little utility post-judgment (i.e., if abusive discovery leads to an improper judgment, these rules have minimal value or impact). Second, while these rules may combat abuse that otherwise might lead to improper judgments, the rules are plainly more effective in the hands of competent attorneys who understand how they operate and how they can potentially deter attorney misconduct. Yet, when victims of abusive discovery are representing themselves pro se, or have been abandoned by counsel, the rules serve a very limited function, if any, in these victims' hands.

### ii.    **Fraud on the Court Requires Setting Aside Judgments**

Rule 60(d) of the Federal Rules of Civil Procedure, which provides the grounds for relief from a final judgment, order, or proceeding, states that the rule "does not limit a court's power to . . . set aside a judgment for fraud on the court."[24] What is "fraud on the court" within the meaning of Rule 60? Rule 60(d)(3) was added in 1948.149 The framers' intention may best be indicated in the Advisory's Committee's discussion of the rule:

> The amendment . . . mak[es] fraud an express ground for relief by motion; and under the saving clause, fraud may be urged as a ground for relief by independent action insofar as established doctrine permits. And the rule expressly does not limit the power of the court . . . to give relief under the savings clause.

---

discovery. The rule simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection.
The duty to make a "reasonable inquiry" is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. It is an objective standard similar to the one imposed by Rule 11.
FED. R. CIV. P. 26(g) advisory committee's notes to the 1983 amendments (emphasis added) (citations omitted).
[23] Outback Steakhouse of Florida., Inc. v. Markley, 856 N.E.2d 65, 85 (Ind. 2006) (disciplining by ethics committee for false statements); People v. Scruggs, 52 P.3d 237, 241 (Colo. 2002) (holding that disbarment was an appropriate remedy for abuse).
[24] 11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE CIVIL § 2870 (3d ed. 2015).

As an illustration of the situation, see Hazel-Atlas Glass Co. v. Hartford Empire Co. [322 U.S. 238 (1944)].[25] Because of the express reference to Hazel-Atlas Glass Co. v. Hartford Empire Co.,[26] an examination of this case is important for a full understanding of the meaning of the phrase. Hartford, in support of an application for a patent, submitted to the Patent Office an article—drafted by an attorney of Hartford— referring to the contested process as a "revolutionary device." The company had arranged to have the article printed in a trade journal under the name of an ostensibly disinterested person.[27] The Patent Office relied heavily on this article in granting the patent application.[28] Hartford then sued Hazel, charging infringement of the patent.

The Third Circuit, in upholding the validity of the patent, also relied on the article.[29] Eventually, Hazel yielded and paid Hartford $1,000,000 and entered into a licensing agreement.[30] Approximately ten years later, the information about the fraud surrounding the agreement was brought to light.[31] Hazel then filed an action with the court to have the judgment against it set aside and the judgment of the district court reinstated.[32] The Supreme Court, in an opinion authored by Justice Black, held that the judgment must be vacated:[33]

Similarly, DOJ counsel of record certified motion in opposition to Relator's Contempt Motion filed because of her extensive economic harm by defendants who garnished and offset her income and federal tax refunds in retaliation – *see* Estimated Mismanagement of Title IV funds by academic institutions, servicer and lender, *infra*]; due to Judge Thompson's failure to

---

[25] FED. R. CIV. P. 60 advisory committee's note to 1946 amendment (citations omitted).
[26] 322 U.S. 238 (1944).
[27] Id. at 240.
[28] Id. at 241.
[29] Id.
[30] Id at 243.
[31] Id.
[32] Id.
[33] Id. at 251.

act upon his issued Standing Protective Order or decide the Administrative Termination motion filed also by DOJ counsel Collier; Relator led to believe DOJ intervened August 2016; now faced a federal government licensed attorney who knew or should have known that research allegedly conducted to inquire into the Relator's academic standing was done with the sole intent to derail her FCA suit by a DOJ legal personnel who used false statements to support a motion and whose language was almost repeated verbatim by Judge Thompson's May 1, 2017 Order. See May 1, 2017 Order; See March 2017 DOJ Counsel's motion, Fn. 1.

[T]he general rule [is] that [federal courts will] not alter or set aside their judgments after the expiration of the term at which the judgments were finally entered. . . . [but] . . . . [e]very element of the fraud here disclosed demands the exercise of the historic power of equity to set aside fraudulently begotten judgments. This is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury.

In the Hartford case, there were Hartford's sworn admissions, therefore, the court find a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals.[34] Additionally, although Hazel may not have exercised proper diligence in uncovering the fraud, the Court thought it immaterial.[35] Indeed, it noted the case did not concern just the private parties, but rather the public at large because there are "issues of great moment to the public in a patent suit."[36] It then stated, Furthermore, tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good

---

[34] Id. at 244–45.
[35] Id. at 246.
[36] Id.

order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.[37] Interestingly, the Court held that it need not decide to what extent the published article by Hartford had influenced the judges who voted to uphold the patent or whether the article was the primary basis of that ruling because "Hartford's officials and lawyers thought the article material" and they were in "no position now to dispute its effectiveness."[38] And since the fraud had been directed to the Third Circuit, that court was the appropriate court to remedy the fraud.[39] Thus, the Supreme Court directed the Third Circuit to vacate its 1932 judgment and to direct the district court to deny all relief to Hartford.[40] Nearly all of the principles that govern a claim of fraud on the court come from the Hazel-Atlas case.[41] First, the power to set aside a judgment exists in every court.[42] Second, in whichever court the fraud was committed, that court should consider the matter.[43] Third, while parties have the right to file a motion requesting the court to set aside a judgment procured by fraud, the court may also proceed on its own motion.[44] Indeed, one court stated that the facts that had come to its attention "not only justify the inquiry but impose upon us the duty to make it, even if no party to the original cause should be willing to cooperate, to the end that the records of the court might be purged of fraud, if any should be found to exist."[45] Fourth, unlike just about every other remedy or claim existing under the rules of civil procedure or common law, there is no time

---

[37] Id.
[38] Id. at 246–47.
[39] Id. at 248–50.
[40] Id. at 251.
[41] WRIGHT ET AL., supra note 151.
[42] Id.
[43] Id. (citing Universal Oil Prods. Co. v. Root Refining Co., 328 U.S. 575 (1946) (other citations omitted)).
[44] Id.
[45] Root Refining Co. v. Universal Oil Prods. Co., 169 F.2d 514, 521–23 (3d Cir. 1948) (emphasis added)

limit on setting aside a judgment obtained by fraud, nor can laches bar consideration of the matter.[46] The logic is clear: "[T]he law favors discovery and correction of corruption of the judicial process even more than it requires an end to lawsuits."[47]

The United States Supreme Court—in a case a few years after the HazelAtlas case—discussed some of the appropriate procedures used in adjudicating fraud on the court claims. The power to unearth such a fraud is the power to unearth it effectively.

Accordingly, a federal court may bring before it by appropriate means all those who may be affected by the outcome of its investigation. But if the rights of parties are to be adjudicated in such an investigation, the usual safeguards of adversary proceedings must be observed.[48] Since Hazel-Atlas, a considerable number of courts have had the opportunity to dissect the meaning of "fraud on the court" and several definitions have been attempted. A number of courts have held that a "fraud on the court" occurs "where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense."[49] Fraud on the court is a very high bar. The Tenth Circuit has held that it is fraud,

> "directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents . . . . It is thus fraud where . . . the impartial functions of the court have been directly corrupted."[50] And "only the most egregious misconduct, such as bribery of a judge or members of a jury, or the *fabrication of evidence by a party in which an attorney is implicated*, will constitute a fraud on the court.

---

[46] See WRIGHT ET AL., supra note 151.
[47] Lockwood v. Bowles, 46 F.R.D. 625, 634 (D.D.C. 1969)
[48] Universal Oil, 328 U.S. at 580.
[49] Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989) (emphasis added) (citing Alexander v. Robertson, 882 F.2d 421, 424 (9th Cir. 1989)); Pfizer Inc. v. Int'l Rectifier Corp., 538 F.2d 180, 195 (8th Cir. 1976); England v. Doyle, 281 F.2d 304, 309 (9th Cir. 1960); United Bus. Commc'ns, Inc. v. Racal-Milgo, Inc., 591 F. Supp. 1172, 1186–87 (D. Kan. 1984); United States v. ITT Corp., 349 F. Supp. 22, 29 (D. Conn. 1972), aff'd mem., 410 U.S. 919 (1973).
[50] Robinson v. Audi Aktiengesellschaft, 56 F.3d 1259, 1266 (10th Cir. 1995) (emphasis added).

There is nothing so unequal or unfair as the equal and fair treatment of unequally treated as a litigant's whose rights are trampled by both a judge and a DOJ counsel of record.

### iii.  Lack Candor By DOJ's Counsel of Record Requires Rescission

Counsel had a professional responsibility duty to show candor towards the court. That would entail correction or rescission or her factually incorrect motion against or be held in contempt; additionally, it required the judge to rescind his May 1, 2017 Order as Relator requested. He did not. Instead, he continued to and did use the same information showing bias that resulted in denial of Relator's (1) motion for Contempt and to (2) Dismiss her False Claims Act suit for his Ordered reasons (a) she is not licensed counsel in Connecticut, (b) he claimed her claims were moot and (c) he unsealed her original documents, subjecting her to public disclosure bar of her unique information.

**IN CONCLUSION**

Judicial bias and DOJ counsel of record fraud on the court requires vacation of Orders entered.

### vi.  Standing Protective Order Not Enforced, Relief from Court Was Denied, While Defendants Retaliated

Document Number 38 Ordered: 'The Plaintiff's Motion for Relief from Court Requested (Doc. No.15). . .is DENIED as moot.'

There are also diverse cases in which courts have allowed litigants to proceed anonymously or pseudonymously to protect them against "other harms" that are deemed to be sufficiently severe. Sealed Plaintiff v. Sealed Defendant, supra at 190. In these cases the courts have "protected social, psychological, and economic interests; they have not always demanded proof of threats to the plaintiff's physical security nor have they always required threats to privacy rights." Steinman, "Public Trial, Pseudonymous Parties: When Should Litigants Be

Permitted To Keep Their Identities Confidential?'', 37 Hastings L.J. 1, 75 (1985) (fn. ref. omitted).

August 2016, Judge Thompson issued a Standing Protective Order, (SPO). In reliance upon that order, Relator complied with the non-disclosure to defendants.

October 31, 2016, Relator filed a Motion for Relief From this Court for retaliation suffered by defendants who were supplied with a copy of the SPO by Relator. Nevertheless, defendants garnished Relator's Social Security Retirement income and offset her federal tax returns by named defendant ECMC with permission from AWH's Hearing and Tribunal Ms. Lanier and Middlehoff of the U.S. Department of Education. October 20, 2017, Judge Thompson denied her Relief Motion nearly a year later, conspicuously late.

Some cases permit litigants to proceed anonymously or pseudonymously to protect them against possible economic retaliatory harm. For instance, the Court of Appeals for the Ninth Circuit concluded that ''extraordinary'' economic harm justified allowing Chinese workers, employed in the Mariana Islands, to proceed pseudonymously in their suit brought under the Fair Labor Standards Act of 1938 (FLSA), ch. 676, 52 Stat. 1060 (current version at 29 U.S.C. secs. 201–219 (2006)). Does I Thru XXIII v. Advanced Textile Corp., 214 F.3d at 1062. The Court of Appeals contrasted the ''extreme nature of the retaliation'' faced by these workers, which included termination of employment, deportation, and possible arrest upon their return to China, with the consequences faced by ''typical'' FLSA plaintiffs, stating: ''While threats of termination and blacklisting are perhaps typical methods by which employers retaliate against employees who assert their legal rights, the consequences of this ordinary retaliation to plaintiffs are extraordinary.'' Id. at 1069, 1071; see also Gomez v. Buckeye Sugars, 60 F.R.D. 106, 106 (N.D. Ohio 1973) (permitting FLSA plaintiff employees to proceed anonymously ''in order to

safeguard against any possible reprisals by their employers that might result from the filing of this lawsuit.''). But see S. Methodist Univ. Association of Women Law Students v. Wynne & Jaffe, 599 F.2d 707, 713 (5th Cir. 1979) (denying anonymity for women lawyers who had joined a title VII sex discrimination suit against two law firms).[51]

In qui tam actions arising under the False Claims Act, 31 U.S.C. secs. 3729–3733 (2006), plaintiffs sometimes seek to protect their identities on the basis of feared retaliatory harm.[52] The results have been mixed. Compare United States ex rel. Permison v. Superlative Techs., Inc., 492 F. Supp. 2d 561, 564 (E.D. Va. 2007) (in a qui tam suit against the plaintiff 's former employer, denying a request to seal the complaint or to grant anonymity because although ''fear of retaliation is not entirely implausible, it is certainly vague and hypothetical at best''), and United States v. Bon Secours Cottage Health Servs., 665 F. Supp. 2d 782 (E.D. Mich. 2008) (denying a qui tam plaintiff 's request to maintain the seal in the case or alternatively to redact identifying information from the record, concluding that the plaintiff 's fear of retaliation by her current or future employers was insufficient to overcome the strong presumption favoring public access to judicial records), with United States ex rel. Doe v. Boston Scientific Corp., No. 4:07–CV–2467 (S.D. Tex., July 2, 2009) (granting a qui tam plaintiff 's request to keep her identity

---

[51] The holding in *S. Methodist Univ. Association of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979), appears predicated partly on the court's statement that one characteristic common to all cases affording plaintiffs anonymity was that the plaintiffs "divulged personal information of the utmost intimacy". Two years later the Court of Appeals clarified that its opinion in *S. Methodist Univ. Association of Women Law Students* did not purport to establish the "utmost intimacy" consideration as a prerequisite to bringing an anonymous suit. *Doe v. Stegall*, 653 F.2d 180, 185–186 (5th Cir. 1981) (permitting child plaintiffs to proceed anonymously in action challenging constitutionality of religious observances in public schools). The court indicated that there was "no hard and fast formula for ascertaining whether a party may sue anonymously" but that the decision "requires a balancing of considerations calling for maintenance of a party's privacy against the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Id.* at 186.

[52] "Qui tam" is shorthand for the Latin expression "qui tam pro domino rege quam pro se ipso in hac parte sequitur", meaning "who as well for the king as for himself sues in this matter". Black's Law Dictionary 1368 (9th ed. 2009). Private individuals may bring qui tam actions on behalf of the United States to recover damages against persons who have submitted false or fraudulent claims to the Government. *Id.* Such an action allows the plaintiff to recover a portion of any money recovered by the Government in the action. 31 U.S.C. sec. 3730(d) (2006). By statute, a qui tam complaint remains under seal for at least 60 days after it is filed. *Id.* sec. 3730(b)(2).

under seal until the case was resolved because the plaintiff, who was formerly employed by a medical device company that was the subject of her qui tam complaint, feared that revealing her identity would cause her husband, who worked in the same industry, to be fired and that he would be unable to obtain new employment).

In this case since October 31, 2016 thru October 20, 2017, ECMC confiscated two federal tax refunds, garnished more than 12 payments from her income for over $4,500.00 for disputed loans wrongfully defaulted. See Exhibit 8 – Sum Certain and the Relation Back Complaint's Affidavit A for University of Bridgeport College of Naturopathic Medicine.

ECMC defaulted University of Bridgeport College of Naturopathic Medicine loans 9 & 10; however, that academic institution owes $18,555.00 in unpaid refunds to the Department. Further, that same academic institution mispresented its program offering in its 2002-2004 catalogue. Specifically, it alleged it had a laboratory, it charged Relator for seven credits for graduate education biomedical scientific courses; however, the school did not have laboratory facilities. Additionally, the overall debt for fraudulent student loans is estimated to be over $145,000.00 inclusive of principal, interest compounded by fraudulent certifications, demands for payment, garnished and federal tax offsets that should have been prohibited by defendants via the Standing Protective Order.

Provided in Relief Motion, Judge Thompson on October 20, 2017, a year later denied Relator's October 2016 Relief from this Court. He took no opportunity to evaluate the severity of potential retaliatory action; the trial court did not take into consideration, among other factors, the severity of the threatened harm, the reasonableness of the Relator's fears, and the party's vulnerability to harm. WHISTLEBLOWER 14106–10W, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT Docket No. 14106–10W. Filed December 8, 2011.

**IN CONCLUSION**

Judge Thompson's unenforced SPO left Relator exposed to economic harms complained

in her FCA and Federal Tort Claims Act suits.

## II. Relator's Claims Are not Moot

### a. Relator's Claims are not Moot; the last Act was September 21, 2017

The statute of limitations for a qui tam action is found in Title 31, Section 3731(b) of the

United States Code.

> "A civil action under section 3730 may not be brought—
>
> (1) more than 6 years after the date on which the violation of section 3729
> is committed, or
>
> (2) more than 3 years after the date when facts material to the right of action are known
> or reasonably should have been known by the official of the United States charged with
> responsibility to act in the circumstances, but in *no event more than 10 years after the
> date on which the violation is committed*, whichever occurs last."

In determining which limitations period applies to an FCA action, courts examine the time at

which either the relator or the government ***became aware*** or knew of the violation.

Relator became aware of the violation April 13, 2016 or thereabout when she received

correspondence from Navient that disclosed it concealed student loans #'s 1 and 2 refunded to it

by New York College of Health Professions on February 4, 2009. Review of the National

Student Loan Data System report for October 28, 2015 showed before its correspondence of

April 2016 that both loan #'s 1 and 2 were reported as outstanding debts with balances of

principal and interest that grew from the October 28, 2015 to the March 2, 2017 dates.

Interest continued to compound on over $145,000.00 of federally insured student loans

Relator did not authorize since April 2016 through September 21, 2017 shown on the U.S.

Department of Education's Ombudsman Report – Exhibit 8 Sum Certain and Relator's letter.

As early as March 2015 through to September 21, 2017 is not more than three years after the date when facts material to the right of action were know or reasonably should have been known. From March 2015 through September 2017 is 2 1/2 years when relator became aware or know of the violations.

**IN CONCLUSION**

Relator's qui tam false claims act suit is not moot as a matter of law. She filed July 16, 2016 when she became aware of the frauds. Her claims should be heard and decided consistent with her due process and equal protection of the law by a fair tribunal with subject matter and personal jurisdiction over the parties.

### III. FEDERAL TORT CLAIMS IS THE EXCLUSIVE JURISDICTION OF THE U.S. FEDERAL COURT OF CLAIMS

#### A. Change of Venue Requested was Denied

Threshold question for court faced with motion to change of venue is whether proposed transferee jurisdiction is place where action could have been initiated. 28 U.S.C.A. § 1404(a). Chet Baker Enterprises, L.L.C. v. Fantasy, Inc., 257 F.Supp.2d 592 (2002). United States district courts have exclusive jurisdiction to determine the liability of the United States under the Federal Tort Claims Act (FTCA). 28 U.S.C.A. §§ 1346(b)(1), 2674.

Factors court weighs on motion for discretionary change of venue are:

(1) place where operative facts occurred;
(2) convenience to parties;
(3) convenience to witnesses;
(4) relative ease of access to sources of proof;
(5) availability of process to compel attendance of unwilling witnesses;
(6) Plaintiff's choice of forum;
(7) forum's familiarity with governing law; and
(8) trial efficiency and interests of justice. 28 U.S.C.A. § 1404(a).

Lower court's denial to Change Venue disregarded the facts that the U.S. Department of Education where the operative facts, parties, witnesses and proof exists in the Washington, D.C. area as does the officials named in the Relation Back Complaint filed.

The Plaintiff-Relator chose that forum as it is her choice over Connecticut where bias and abuse of discretion has creeped into the case by the judiciary and misconduct of Officer of the Court. Further in Washington, D.C., trial efficiency is in the interest of justice.

With the understanding that the Higher Education Act of 1965 as amended is enforced by the U.S. Department of Education; then it is the federal government entity that has been negligent, omitted or allowed wrongful acts to occur by its Program Participation Agreement (PPA) holders, i.e., Navient-Servicer, ECMC-Lender and the five academic institutions named in the False Claims Act complaint.

**IN CONCLUSION**

The filed June 20, 2017 Relation Back Complaint, relies on *Federal Tort Claims Act* raised against the U.S. Department of Education officials for their omission, wrongful and negligent failure of its officers to perform enforcement Act delegated to it under the HEA of 1965, that are *within the line and scope of their employment under* 28 USC § 2674. The Act states that:

> United States shall be liable "in the same manner and to the same extent as a private individual under like circumstances." 28 USC § 1346 (b) states the basis for claims as the *"negligent or wrongful act or omission"* of any government employee *while acting within the scope of his employment.*

Consequently, virtually every kind of negligence action that could be brought against private individuals can be maintained against the government whether based on misfeasance[53] or nonfeasance[54]. The misfeasance or nonfeasance occurred under HEA of 1965.

Denial of Relator's motion to change venue when a federal government is named as a defendant is within the jurisdiction of the U.S. Federal Court of Claims. For the foregoing reasons, the Order of this court should be vacated and the motion granted.

## IV.    DAMAGES NEGLIGENT INJURY IN FACT

Relator-Borrower has attempted to resolve her alleged student loan debts with servicer, lender and academic institutions since March 2015 through July 2016. As of March 2, 2017, the following is the Estimated Mismanagement of Title IV funds that pertains to all five academic institutions that received student loan money from the U.S. Department of Education by unlawfully using Relator's personal characteristics and identity due to non-compliance with the Higher Education Act of 1965 as amended enforced by the U.S. Department of Education that caused monetary injury shown on Exhibit 8 – Sum Certain and Relator's 11/17/2017 letter.

Dated:  November 17, 2017

Respectfully submitted

*Florence R. Parker Chailla*
Florence R. Parker Chailla, J.D.
P.O. Box 1111 - Stroudsburg, PA 18360
Tel: 570 534-7082
Email: thebusiness2@ yahoo.com

---

[53]Malfeasance, wrongful conduct by a public official.
[54]Nonfeasance, a failure to act when under an obligation to do so; a refusal (without sufficient excuse) to do that which it is your legal duty to do.

## CERTIFICATION

To the best of my knowledge and belief, the foregoing statements made herein are true to the best of my knowledge. I am aware that if any of the foregoing is willfully false, I may be punished.

**Dated: November 17, 2017**

*Florence R. Parker Chailla*
Florence R. Parker Chailla, J.D.
P.O. Box 1111 - Stroudsburg, PA 18360
Tel: 570 534-7082
Email: thebusiness2@ yahoo.com

## PROOF OF SERVICE

I affirm that the foregoing named below were provided with a copy of this Motion to Preserve Facts and Law for appeal was provided by first class U.S. Postal Mail, fax or email to the following individuals:

William Collier, Esq., USDOJ
Attorney General of the United States
U.S. Dept. of Justice
450 Main St., Room 328
Hartford, CT 06103
William.collier@usdoj.gov

New York Attorney General
Eric Schneiderman, AG
The Capitol - Albany Office
The Capitol Albany, NY 12224-0341
Fax 212 416-6087

Florida Attorney General
Attn. Russell Kent, Esq.
Office of AG
State of Florida
The Capitol PL-10
Tallahassee, FL 32399-1050
Fax: 850 488-4872

Connecticut Attorney General
George Jespen, Attorney General
55 Elm Street
Hartford, CT 06106
Fax: 860 808-5387

California Attorney General
The of Attorney General's Office
California Department of Justice
Attn. Jacqueline Dale, Esq., False Claims Unit
455 Golden Gate Ave., Ste. 11000
San Francisco, CA 94102-7004
Fax: 916 323-5341

I am aware that if any of the foregoing are willfully false, I may be subject to punishment.

**Dated: November 17, 2017**

*Florence R. Parker Chailla*
Florence R. Parker Chailla, J.D.
P.O. Box 1111 - Stroudsburg, PA 18360
Tel: 570 534-7082
Email: thebusiness2@ yahoo.com